

FILED

MAR 1 8 2004

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

SEALED
Unsealed 02-28-04

UNDER SEAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### Charleston Division

RAKESH WAHI, M. D.,                )
                                   )
                    Plaintiff,     )
                                   )
        v.                         )          Civil Action No.2:04-0019
                                   )          (Judge Goodwin)
                                   )
                                   )
CHARLESTON AREA MEDICAL CENTER,    )
a West Virginia Corporation, JAMAL KAHN, )
H. RASHID, K. C. LEE, ANDREW       )
VAUGHN, JOHN L. CHAPMAN, GLENN     )
CROTTY, and JOHN DOES I-X,         )
                                   )
                                   )
                    Defendants.    )
_____)

## AMENDED COMPLAINT

### INTRODUCTION

1. This Complaint is brought pursuant to 15 U.S.C. §§ 1 and 2 (Sherman Act anti-

trust claims) and 42 U.S.C. §§ 1981, 1983, and 1985. It also asserts claims for violations

1

12

of federal law and the United States constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as well as pendent state claims. This proceeding seeks monetary damages as well as injunctive and declaratory relief.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343, as the matters in controversy involve federal questions, and 28 U.S.C. §§ 2201 and 2202, as the matters in controversy request injunctive relief and declaratory judgment The Court, furthermore, has supplemental jurisdiction over the state claims asserted in this case pursuant to 28 U.S.C. § 1367.

3. Venue in this judicial district is proper under 28 U.S.C. § 1391(b), as both the plaintiff and the defendant reside in this district.

## THE PARTIES

4. Plaintiff, Rakesh Wahi, M. D. ("Dr. Wahi"), resides in Charleston, West Virginia. Dr. Wahi has had a contractual relationship with the Corporate Defendant from January 1993 to the present.

5. Defendant Charleston Area Medical Center, Inc. ("Corporate Defendant") is a West Virginia corporation. It may be served by serving its resident agent, Marshall A. McMullen, Jr., at the following address: PO Box 3669, Charleston, West Virginia 25326.

6. Jamal Kahn is the Medical Director of Peri-Operative Services at The Corporate Defendant. He was also the chief of a group of heart surgeons called Theracic

2

and Cardiovascular Surgery Associates ("TCA"). He may be served at The Corporate Defendant at the following address: 501 Morris Street, Charleston, West Virginia 25326.

7. H. Rashid is a heart surgeon at the Corporate Defendant. He is also a member of a group of heart surgeons called Theracic and Cardiovascular Surgery Associates ("TCA"). He may be served at Theracic and Cardiovascular Surgery Associates, 3100 MacCorkle Ave., Suite 402, Charleston, West Virginia 25304.

8. K. C. Lee is a heart surgeon at the Corporate Defendant. He is also a member of a group of heart surgeons called Theracic and Cardiovascular Surgery Associates ("TCA"). He may be served at Theracic and Cardiovascular Surgery Associates, 3100 MacCorkle Ave., Suite 402, Charleston, West Virginia 25304.

9. Andrew Vaughn is a cardiologist at The Corporate Defendant. He may be served at The Corporate Defendant at the following address: 3100 MacCorkle Ave., SE., #709, Charleston, West Virginia 25304.

10. John L. Chapman is a cardiovascular surgeon at The Corporate Defendant. He was or is also a member of a group of heart surgeons called Theracic and Cardiovascular Surgery Associates ("TCA"). He may be served at 906 Chapel Road, Charleston, West Virginia 25304.

11. Glenn Crotty was the Chief of Staff at the Corporate Defendant and he is now the Chief Operating Officer of The Corporate Defendant. He may be served at The Corporate Defendant at the following address: 501 Morris Street, Charleston, West Virginia 25326.

3

12. Defendants John Does I-X are individuals who participated in the violations alleged in this Complaint along with the named defendants. These are individuals which the plaintiff does not currently have enough evidence against to identify or name as defendants, but for whom he anticipates discovery will provide sufficient evidence to name as defendants.

## THE FACTS COMMON TO ALL COUNTS

13. The plaintiff, Dr. Wahi, has been a physician licensed to practice medicine in West Virginia since 1993.

14. Dr. Wahi specializes in cardiovascular and thoracic surgery as well as general surgery.

15. In January of 1993, Dr. Wahi joined the staff of defendant Charleston Area Medical Center ("The Corporate Defendant").

16. As a staff member of The Corporate Defendant, Dr. Wahi was covered by and protected by the "Medical Staff Governing Documents" of the Corporate Defendant, including the "Medical Staff Bylaws, the "Medical Staff Procedures Manual," and the "Medical Staff Rules and Regulations."

17. The Corporate Defendant is accredited by the Joint Commission for Accreditation of Hospital Organizations ("JCAHO"), and is also subject to the rules and regulations of JCAHO.

18. At all times relevant herein, the defendants were acting in bad faith and with callous disregard for the constitutionally protected and/or federally protected rights of the

4

plaintiff.

## COUNT I

### Anti-Trust Conspiracy (Sherman Act. 15 U.S.C. § 1)

19. Plaintiff incorporates the allegations of paragraphs 1 through 18 by reference herein.

20. Dr. Wahi was promoted from probationary staff to provisional staff of the Corporate Defendant in July 1993, and in the Spring of 1994, he was appointed by The Corporate Defendant as the cardiac surgeon to take care of President Bill Clinton when the President visited Charleston in the event of any emergency requiring medical care.

21. In June of 1994, Dr. Wahi started his own practice in the hospital and started exploring the possibility of Beckley and associating himself with surgeons at Beckley "Medsurg Group."

22. To the best of Dr. Wahi's knowledge, nobody questioned Dr. his medical competence or behavior prior to June of 1994, when he started exploring the possibility of associating himself with the "Medsurg Group" in Beckley.

23. The Corporate Defendant has consistently opposed the efforts of the Beckley hospitals to obtain a certificate of need for cardiac surgery. and has only agreed to not oppose certificates of need when the surgeons of competing groups offered them a percentage of ownership in the business. For example, TCA and the Corporate Defendant are jointly participating in setting up new cardiac surgery programs in Parkersburg and Bluefield to their joint economic benefit.

5

24.  In order to restrain trade and keep Dr. Wahi from practicing with the "Medstrg
Group" in Beckley, TAC and The Corporate Defendant joined together and acted in
concert to have Dr. Wahi's ability to practice medicine taken away from him, so that he
could not compete with TAC and the Corporate Defendant.

25.  As part of this combined effort to restrain trade, defendant Crotty, then chief
of staff of The Corporate Defendant, appointed a group of physicians to investigate Dr.
Wahi in January of 1995, and asked the group to make a recommendation as to whether
Dr. Wahi's privileges should be suspended immediately based upon what he
characterized as "troubling incidents."

26.  When this first group of physicians did not recommend Dr. Wahi's
suspension, defendant Crotty then sent Dr. Wahi's charts to an outside agency for a
review, and attempted to influence the outcome of the review by providing an inaccurate
and incomplete summary of facts.

27.  When the Corporate Defendant received the report from the outside agency,
defendant Crotty had the report destroyed before Dr. Wahi could see it.  Based upon
belief and information, the report was destroyed because it was favorable to Dr. Wahi.

28.  Unsuccessful in his efforts to keep Dr. Wahi from practicing medicine based
upon the findings and recommendations of the first group asked to investigate Dr. Wahi,
and the subsequent review by an outside agency, defendant Crotty then appointed an
"investigative committee" consisting of Dr. Wahi's competitors and primarily of members

6

of TAC to investigate Dr. Wahi and look at ways of denying him hospital privileges.

29. The economic competitors appointed to the so-called initial "investigative committee,"and/or subsequent committees, consisted of defendants Jamal Kahn, H. Rashid, K. C. Lee, Andrew Vaughn, and John L. Chapman.

30. The first group of physicians appointed to investigate Dr. Wahi, the outside review, and the "investigative committee" were all conducted or formed outside of, and contrary to the the Corporate Defendant's bylaw.

31. While these investigations were being conducted outside the bylaws, a duly constituted peer review of Dr. Wahi, operating within the bylaws, continuously monitored Dr. Wahi's medical treatment of patients, and has always found Dr. Wahi's care to be within the required standard of care.

32. The Corporate Defendant, however, has ignored the results of its duly conducted peer reviews of Dr. Wahi, and based upon the actions of the appointed "investigative committee(s)" consisting of Dr. Wahi's economic competitors, has repeatedly reported Dr. Wahi to the NPDB without following the guidelines of the NPDB, and attempted to have Dr. Wahi's hospital privileges and license taken away, so that he could not practice medicine in competition with the Corporate Defendant and TAC.

33. On July 30, 1999, the Corporate Defendant summarily suspended the privileges of Dr. Wahi, and has failed or refused to give him a hearing as required by its

7

bylaws since that time, thereby preventing him from practicing medicine in competition with TAC and the Corporate Defendant.

34. The foregoing actions against Dr. Wahi were taken by the Corporate Defendant and defendant Crotty, acting in concert and in combination with defendants Kahn, Rashid, Lee, Vaughn, and Chapman, for the purpose of restraining trade in the Charleston, Beckley, Bluefield, and Parkersburg area of West Virginia, in violation of 15 U.S.C. § 1.

## COUNT II

### Anti-Trust Monopilization (Sherman Act. 15 U.S.C. § 2)

35. Plaintiff incorporates the allegations of paragraphs 1 through 34 by reference herein.

36. Defendant the Corporate Defendant and TAC possess monopoly power over cardiac surgery in the Charleston, Beckley, Bluefield, and Parkersburg area of West Virginia.

37. Defendants the Corporate Defendant and TAC have willfully acquired and maintained that monopoly power, by among other things, keeping heart surgeons such as Dr. Wahi from competing against them.

38. The monopolization of cardiac surgery in the Charleston, Beckley, Bluefield, and Parkersburg area of West Virginia, by the Corporate Defendant and TAC, has

8

resulted in the following harm to consumers in the monopolized area, which also demonstrates the monopolization of cardiac surgery in the area:

a) Consumers of health care in the area undergo Cardiac interventions at a much higher rate than is expected by either the demographics or national standards;

b) Consumers of health care in the area undergo negative cardiac catheterizations at a much higher rate than nationally reported. This leads to extra costs as well as extra risks from the procedure such as infection, stroke as well as death;

c) Consumers of health care in the area pay much higher fees to the Corporate Defendant for cardiac care than paid in other areas;

d) Residents of the area suffer from a much higher death rate from cardiac disease than expected from the national norms even after adjusting for the risk;

e) Residents of the area suffer from a higher risk of dying from Cardiac surgery than the nationally accepted norms as reported by the STS database;

f) Residents of the area undergo more Cardiac surgery than predicted and undergo more bypasses than predicted;

g) Residents of the area receive far fewer internal mammary bypasses than the national norms thereby getting less long-term benefits from the surgery;

h) Residents of the area are more likely to be denied the benefits of heart surgery if

9

the risk of doing surgery is high irrespective of the gain from the surgery;

i) Residents of the area undergo Cardiac surgery that is unlikely to lead to increased longevity, that is, fewer people undergo surgery for poor ventricular function and triple vessel disease than the national average;

j) The monopolistic nature of the Corporate Defendant's control over the market has led it to provide perfusion services on an "on call" rather than in hospital basis resulting in significant delays in providing these services in the hospital, and also has led to higher complications and deaths;

k) The monopolistic nature of the Corporate Defendant and Jamal Khan has led to performance of "ghost surgery" by Jamal Khan when a large number of patients had a large part of their surgery performed by other surgeons or nurses;

l) The monopolistic nature of Jamal Khan and his employees has led to a high incidence of patient deaths from causes such as sawing of the heart, chest tubes in the colon etc;

m) The monoplistic nature of the practice at the Corporate Defendant led to non-availability of such techniques as "ultra-filtration" etc, when they were otherwise universally available, leading to poor patient outcomes;

n) The patients in the area with lung and other thoracic malignancies were not properly staged; therfore the proper care was not made available leading to a high

10

mortality as well as low long term survival;

p) The monoplistic nature of the Corporate Defendant's practice led Jamal Khan and his associates to perform experimental and new procedures such as "beating heart surgery" and "cryopreseved valve replacements" without adequate preparation and care, leading to extremely high mortality and other complications such as blood loss etc.;

q) By removing Dr. Wahi as a competitior in the area, health care consumers were denied the choice of a surgeon willing to offer surgical corrections for patients with "high risk" problems. The consumers were also denied access to a surgeon willing to offer surgery to a high proportion of females as well as medicaid population;

r) Consumers in the area were denied access to the services of a thoracic surgeon with background and training in thoracic oncology.

s) The Corporate Defendant placed post-operative Cardiac patients at extremely high risk of development of pnuemonia and other infection by insisting upon their transfer to MICU, which was known to be rife with infections. These transfers were done discriminating in favor of Jamal Kal ln and his associates.

39. The foregoing actions against Dr. Wahi were taken by the Corporate Defendant and defendant Crotty, acting in concert with defendants Kahn, Rashid, Lee,

Vaughn, and Chapman in furtherance of a conspiracy to prevent Dr. Wahi from

practicing medicine with the intent to monopolize theracic and cardiovascular medicine

and surgery in the Charleston, Beckley, Bluefield, and Parkersburg area of West Virginia

in violation of 15 U.S.C. § 2.


## COUNT III

### Denial of Due Process in Violation of Fifth Amendment of the Constitution of the United States and Violation of Federal Reporting Requirements and Procedures to the NPDB


40. Plaintiff incorporates by reference herein the allegations of paragraphs 1

through 39.

41. On or about November 6, 1996, the Corporate Defendant, without following

its own guidelines, rules, regulations, and procedures, summarily suspended the clinical

privileges of Dr. Wahi over his alleged treatment of a patient, contrary to the criteria and

rules established by the NPDB.

42. On or about December 6, 1996, the Corporate Defendant reported the

summary suspension of Dr. Wahi to the National Practitioner Data Bank ("NPDB").

43. By reporting this matter to the NPDB, the Corporate Defendant was acting

under color of federal law.

44. On or about August 21, 1996, Dr. Wahi's treatment of the patient in question was evaluated and reviewed by the duly constituted, standing, Peer Review Committee, and their judgment was that Dr. Wahi's treatment of the patient was appropriate, i.e. the committee concluded that the "[c]are appears appropriate."

45. Despite the Peer Review Committee's finding of "appropriate" care, the Corporate Defendant has refused to withdraw its erroneous and improper report to the NPDB.

46. Two other reports of the Corporate Defendant, dated November 25, 1996, and December 24, 1997, were triggered by the foregoing initial report to NPDB, and they are accordingly based upon false information reported in a procedurally flawed manner.

47. The Corporate Defendant also failed to follow its own rules, regulations, and guidelines, as well as those of the NPDB and the Health Care Quality Improvement Act, in making additional reports to the NPDB on March 22, 1999, and September 13, 1999.

48. As a result of these invalid reports to the NPDB, the West Vriginia State Board of Medicine brought charges against Dr. Wahi, seeking to take his medical license away, based upon the Corporate Defendant's reported allegations against Dr. Wahi.

49. The foregoing acts and conduct of the Corporate Defendant deprived plaintiff of his rights, privileges and immunities secured by the Constitution and laws of the United States, including the right of plaintiff to both procedural and substantive due

process secured by the Fifth and Fourteenth Amendments to the Constitution of the United States.

## COUNT IV

### Retaliation in Violation of First Amendment
### Right to Petition the Government for a Redress of Grievances

50. Plaintiff incorporates the allegations of paragraphs 1 through 49 by reference herein.

51. In 2002, after finding out about the findings of the Peer Review Committee, Dr. Wahi wrote the NPDB a letter asking it to clear up the erroneous, false, and procedurally flawed report made by the Corporate defendant to the NPDB on November 6, 1995.

52. In writing the NPDB, an agency of the United States Government, Dr. Wahi was exercising his First Amendment right to petition the government for a redress of grievances.

53. On April 22, 2003, the NPDB wrote the Corporate Defendant a letter asking it to describe the reasons for taking the action against Dr. Wahi reported on November 6, 1996.

54. In response, the Corporate Defendant filed an amended report with the NPDB on June 10, 2003, providing false information and making Dr. Wahi's conduct

14

appear to be even more egregious, and containing additional charges, than originally involved in the first report, and also failing to disclose that the Peer Review Committee had found his care to be "appropriate."

55. Dr. Wahi wrote the NPDB another letter in 2002, asking it to clear up the erroneous, false, and procedurally flawed report made by the Corporate defendant to the NPDB on September 13, 1999.

56. In writing the NPDB, again, Dr. Wahi was exercising his First Amendment right to petition the government for a redress of grievances.

57. On April 24, 2003, the NPDB wrote the Corporate Defendant a letter asking it to describe the reasons for taking the action against Dr. Wahi reported on Jul 30, 1999.

58. In response, the Corporate Defendant filed an additional amended report with the NPDB, with respect to its July 30, 1999, report, providing false and impertinent information designed to place Dr. Wahi in a bad light.

59. The amended reports referred to above were filed and reported in retaliation for Dr. Wahi exercising his First Amendment right to petition the government for a redress of grievances.

60. The amended reports were filed with the NPDB under color of federal law.

61. The foregoing acts and conduct of the Corporate Defendant deprived plaintiff of his rights, privileges and immunities secured by the Constitution and laws of the

15

United States, including the right of plaintiff to petition the government for a redress of grievances, secured by the First Amendment to the Constitution of the United States.

## COUNT V

### Breach of Contract and
### Breach of Implied Covenant of Good Faith and Fair Dealing

62. Plaintiff incorporates the allegations of paragraphs 1 through 61 by reference herein.

63. On July 30, 1999, the Corporate Defendant summarily suspended the privileges of Dr. Wahi.

64. Since summarily suspending Dr. Wahi's privileges, the Corporate Defendant has conducted no proper investigation of the merits of the reason for the suspension, and has provided no information to him that suggests the his patients were in imminent danger.

65. Dr. Wahi requested a timely hearing after notice of the summary suspension on September 8, 1999.

66. Although the defendant The Corporate Defendant appointed a Hearing Panel on December 2, 1999, which included Dr. Dennis Moritz as a member of the panel, it has never provided Dr. Wahi with a hearing.

16

67. The Corporate Defendant has also failed to provide Dr. Wahi with access to records necessary to defend himself in any hearing, despite Dr. Wahi's making a written request for those documents on September 8, 1999.

68. Medical Staff Procedures Manual § 3.5 provides that when clinical privileges of a physician are suspended, a hearing on any charges "shall begin as soon as practicable."

69. It is approaching 5 years since the suspension of Dr. Wahi's clinical privileges and his request for a hearing and for the records necessary to defend himself, and the Corporate defendant has failed to provide Dr. Wahi with a hearing as required by its Medical Staff Procedures Manual as well as the records necessary to defend himself.

70. On August 31, 2001, the West Virginia State Board of Medicine ("Board") communicated with Corporate Defendant hearing panel member Dr. Dennis Moritz regarding Dr. Wahi, and Dr. Moritz subsequently agreed to serve as the State Board of Medicine's expert witness against Dr. Wahi with respect charges the Board brought against Dr. Wahi based upon the Corporate Defendant's report to the NPDB.

71. On January 10, 2004, the following news article, in pertinent part, was published in the *Charleston Daily Mail*:

CAMC officials are confident in their decision not to reinstate [Dr. Wahi].

17

"We stand by our decision not to renew his privileges," said Dr. Glenn
Crotty, chief operating officer at CAMC. "We followed our obligation
under the law and reported him to the National Practitioner Data Bank."

("Board Dismisses Charges Against Local Surgeon," *Charleston Daily Mail,* January 10,

2004, p. 2; Attached as Exhibit A).

72. The Corporate Defendant is contractually bound by the Medical Staff

Procedures Manual as part of its agreement with Dr. Wahi.

73. The Corporate Defendant has breeched its contract with Dr. Wahi by its

failure to provide a hearing on his summary suspensions "as soon as practicable" and

also by failing to provide a fair hearing.

74. The Corporate Defendant has also failed to act in good faith and with fair

dealing with respect to Dr. Wahi.

## COUNT VI

### Conspiracy to Denial Due Process in Violation of Fifth and
### Fourteenth Amendments of the Constitution of the United States

75. Plaintiff incorporates the allegations of paragraphs 1 through 74 by reference

herein.

76. The Corporate Defendant's reports to the NPDB on March 22, 1999, and

September 13, 1999, triggered charges and actions by the West Virginia State Board of

Medicine on September 10, 2001, to take Dr. Wahi's medical license away, despite the

18

fact that Dr. Wahi had previously been investigated and cleared of most of those charges by the West Virginia State Board of Medicine on two prior occasions.

77. The Corporate Defendant then sought to bypass the requirement that it give Dr. Wahi a hearing by relying upon the West Virginia State Board of Medicine to take Dr. Wahi's medical license away before the Corporate Defendant ever gave Dr. Wahi a hearing, thereby rendering the requirement for the Corporate Defendant to provide Dr. Wahi a hearing moot, since he would not be able to practice medicine in any event without a medical license.

78. The charges of the Board against Dr. Wahi, acting in concert with the Corporate Defendant, violated principles of due process in that they violated established principles of *res judicata* and state law and regulations prohibiting the bringing of charges more than two years old, as well as charges which had already been dismissed and expunged from Dr. Wahi's Board records.

79. On April 11, 2001, Elizabeth Spangler, Vice President of Medical Affairs of the Corporate Defendant, and Bobby Smith, a credentialing clerk of the Corporate Defendant, met and conferred with the prosecutor and staff of the West Virginia State Board of Medicine, encouraging the Board and collaborating with the Board to pursuit charges against Dr. Wahi which were more than two years old, already dismissed on two previous occasions, and already expunged from his Board medical records.

80. On August 31, 2001, Corporate Defendant hearing panel member Dr. Dennis

19

Moritz communicated with the Board of Medicine regarding the charges against Dr.
Wahi, and Dr. Moritz subsequently agreed to serve as the Board's expert witness against
Dr. Wahi with respect to charges the Board brought against Dr. Wahi based upon the
Corporate Defendant's report to the NPDB.

81. The Corporate Defendant, acting in concert with the State Board of Medicine
to bring these charges against Dr. Wahi for the purpose of having his medical license
taken away, was acting under color of state law at all times pertinent hereto.

82. The Corporate defendant has participated, and has acted in concert together
with the State Board of Medicine, in the foregoing actions to deprive the plaintiff of his
constitutional right to due process.

83. The charges brought by the State Board of Medicine and pursued jointly by
the Corporate Defendant and the State Board of Medicine against Dr. Wahi were
dismissed by the State Board of Medicine on November 10, 2003, after the third
prosecutor appointed by the Board refused to pursue the charges against Dr. Wahi
informed the Board that he refused to prosecute because it would be unethical for him,
as an attorney, to pursue these same charges against Dr. Wahi.

84. The dismissal of the charges against Dr. Wahi, however, only occurred after
Dr. Wahi had expanded considerable sums of money in legal fees and costs defending
himself from the charges, and had been precluded from other employment in his chosen
profession as a physician due the adverse publicity surrounding the pursuit of the

20

charges against him.

86.  The foregoing acts and conduct of the Corporate Defendant, has deprived Dr.
Wahi of his rights, privileges and immunities secured by the Constitution of the United
States, including the right to due process, guaranteed by the Fifth and Fourteenth
Amendments of the Constitution of the United States.

Collateral Estoppel

87.  The charges made by the Corporate Defendant have been pursued by the
State Medical Board against Dr. Wahi on three (3) separate occasions, with the active
participation of the Corporate Defendant, e.g. a member of the designated hospital
hearing panel, Dr. Dennis Moritz, was the expert witness for the Board against Dr.
Wahi.

88.  On the third occasion, after the West Virginia Supreme Court of Appeals
issued a show cause ruling to the Board to show why the charges should not be barred,
among other reasons, on the grounds of *res judicata,* the prosecutor refused to pursue the
charges and the Board then dismissed the charges a third time.

89.  The Corporate Defendant is collaterally estoppel from further pursuing these
same charges against Dr. Wahi, having already unsuccessfully pursued them in concert
with the State Medical Board.

## COUNT VII

### Defamation

90. Plaintiff incorporates the allegations of paragraphs 1 through 89 by reference herein.

91. The amended reports published by the Corporate Defendant to the NPDB on June 10, 2003, were false and defamatory, *per se*.

92. The Corporate Defendant published the defamatory reports to the NPDB with reckless disregard for the truth.

93. For the foregoing reason, the Corporate Defendant is liable to the plaintiff for defamation.

## COUNT VIII

### Invasion of Privacy/Disclosure of Private Information

94. Plaintiff incorporates the allegations of paragraphs 1 through 93 by reference herein.

95. Reports made by hospitals to the NPDB are confidential and privileged, and federal law prohibits the disclosure of such reports outside the U. S. Department of Health and Human Services. *See e.g.*, 45 CFR § 60.13.

96. The Corporate Defendant and defendant Crotty violated the confidentiality of reports to the NPDB when Dr. Glenn Crotty, chief operating officer for the Corporate

Defendant, informed a reporter for the *Charleston Daily Mail* that the Corporate Defendant had "reported [Dr. Wahi] to the National Practitioner Data Bank," resulting in the dissemination of that confidential and private information to the general public on January 10, 2004. (*See* "Board Dismisses Charges Against Local Surgeon," *Charleston Daily Mail*, January 10, 2004, p. 2; Attached as Exhibit A).

97. The Corporate Defendant and defendant Crotty's public disclosure of this private information concerning Dr. Wahi, in violation of federal law and regulations, constitutes an invasion of privacy by the Corporate Defendant and defendant Crotty against Dr. Wahi, or in the alternative, a wrongful disclosure of private facts.

## COUNT IX

### Violation of 42 U.S.C. Section 1981

98. Plaintiff incorporates the allegations of paragraphs 1 through 97 by reference herein.

99. Dr. Wahi has had a contract with the Corporate Defendant, as contemplated by 42 U.S.C. Section 1981, since January of 1993.

100. Dr. Wahi's national origin is Indian and his race is Asian.

101. Caucasians who engage in incompetent and unprofessional conduct at the Corporate Defendant are not investigated, suspended, disciplined, subjected to unfair

23

and biased peer review procedures, reported to the NPDB, summarily suspended without a hearing, or denied a hearing on charges against them, and are held to a different and less stringent standard of care than that applied to Dr. Wahi.

102.  For example, the Corporate Defendant has taken no action of any kind against a Caucasian cardiac surgeon who has operated upon "wrong patients" and also committed several acts which fall below the relevant standard of medical care.

103.  The foregoing actions of the Corporate Defendant in conducting its investigations targeted at Dr. Wahi, reporting Dr. Wahi to the NAPD, restricting or impending his clinical privileges, suspending him without a hearing, denying him a hearing, and public announcing that he has been reported the NPDB are based upon his race and national origin, in violation of 42 U.S.C. Section 1981.

## COUNT X

### Conspiracy to Obstruct Justice and to Deny Equal Protection of the Laws in Violation of 42 U.S.C. § 1985

104.  Plaintiff incorporates the allegations of paragraph 1 through 103 by reference herein.

105.  The plaintiff, Dr. Wahi, is a member of a class entitled to protection under 42 U.S.C. § 1985, i.e., his national origin is Indian and his race is Asian.

106.  Beginning in January of 1995, and continuing to the present, the Corporate Defendant and defendants Crotty, Kahn, Rashid, Lee, Vaughn, and Chapman have

24

conspired to subject Dr. Wahi to unfair and biased investigations, summary suspensions without a hearing, report him to the NPDB, and/or terminate him without a hearing..

107. Defendant Kahn is of Pakistani nationality and Islamic religion, both of which are traditionally and historically biased against those of Indian nationality.

108. Non-Indians who engage in incompetent and unprofessional conduct at the Corporate Defendant are not investigated, suspended, disciplined, subjected to unfair and biased peer review procedures, reported to the NPDB, or terminated without a hearing, and are held to a different and less stringent standard of care than that applied to Dr. Wahi.

109. The foregoing actions against Dr. Wahi were motivated by an invidious or class based animus against the plaintiff.

110. The foregoing actions of the Corporate Defendant in conducting its investigations, reporting Dr. Wahi to the NAPD, or restricting or impending his clinical privileges, and terminating him without a hearing, are based upon his race and national origin.

111. The Corporate Defendant and defendants Crotty, Kahn, Rashid, Lee, Vaughn, and Chapman conspired for the purpose of depriving the plaintiff of equal protection under the laws and of equal privileges and immunities under the laws, in violation of 42 U.S.C. § 1985(3).

25

## COUNT XI

### Neglect to Prevent Conspiracy in Violation of 42 U.S.C. § 1986

112. Plaintiff incorporates the allegations of paragraph 1 through 111 by reference herein.

113. To the extent that the Corporate Defendant and defendants Crotty, Kahn, Rashid, Lee, Vaughn, Chapman, and the John Doe defendants, did not directly participate in the foregoing acts in violation of 42 U.S.C. § 1985, as alleged in the foregoing Count X, they have knowledge of the wrongs conspired to be done by the defendants in the preceding count, have power to prevent or to aid in preventing the commission of the same conspiracy, and have neglected or refused to do so, in violation of 42 U.S.C. Section 1986.

### DAMAGES

114. The foregoing acts, conduct, and behavior of the defendants have injured the plaintiff in his person and in his property.

115. As a result a foregoing conduct of the defendants, the plaintiff has lost substantial income and has not been able to obtain meaningful employment since 1999..

116. The foregoing acts, conduct, and behavior of the Jane Doe defendants, and the Corporate Defendant, and each of them, were performed knowingly, intentionally, and maliciously, and/or with reckless or callous indifference to the rights of others, by

26

reason of which plaintiff is entitled to an award of punitive damages, in addition to compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE  plaintiff respectfully prays that this Court:

1. Find and declare that the reports made by the Corporate Defendant to the NPDB are invalid and contrary to law;

2. Direct the Corporate Defendant to remove its derogatory reports concerning Dr. Wahi from the NPDB;

3. Direct and order the Corporate Defendant to reinstate Dr. Wahi's hospital privileges;

4. Award actual damages to plaintiff according to proof;

5. Award punitive damages to plaintiff and/or treble damages as allowed by law;

6. Award mental anguish damages to plaintiff according to proof;

7. Award plaintiff attorneys fees and costs; and

8. Award such other relief as the Court may deem just and appropriate.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY.

Respectfully submitted,

John C. Yoder, Esq. (WV Bar No. 5624)
Attorney at Law
PO Box 940
Harpers Ferry, W. Va. 25425
(304) 535-6842

COUNSEL FOR PLAINTIFF

28

## CERTIFICATE OF SERVICE

I, John C. Yoder, counsel for the plaintiff, do hereby certify that I served the foregoing Amended Complaint on the defendant Charleston Area Medical Center, by causing a true and correct copy of the same to be deposited in the U.S. Mail, First Class postage prepaid, addressed as follows, on this 17th day of March, 2004:

Richard D. Jones, Esq.
David S. Givens, Esq.
Erica M. Baumgras, Esq.
FLAHERTY, SENSABAUGH & BONASSO, P.L.L.C.
P.O. Box 3843
Charleston, WV 25338-3843

John C. Yoder
Counsel for Plaintiff

D:\Wahi\Fed\Complaint\Amended.wpd

## Charleston Newspapers
### Putting Information In Your Hands

Library

Home / News / Features / Subscribe / Reader rewards / Circulation /                 / Customer service
Accounting / Advertising / Marketing / Internet services / Human resources / Employee directory

EXHIBIT __A__
Page __1__ of
__2__ Pages

Searching the News
Library is free.
Download articles you
want for only $2.25
each.

# library.cnpapers.com

## BOARD DISMISSES CHARGES AGAINST LOCAL SURGEON

Discount Packages

Get a library card

Access your existing
library card

Users' Agreement
and Privacy Policy

Home

Publication: CHARLESTON DAILY MAIL
Published: 01/10/2004
Page: 2A
Headline: BOARD DISMISSES CHARGES AGAINST LOCAL SURGEON
Byline: THERESE SMITH, DAILY MAIL HEALTH REPORTER

For a second time, the state Board of Medicine has dismissed charges against
Charleston surgeon **Rakesh Wahi**.

**Wahi** had been at the center of controversy at Charleston Area Medical Center
in 1995 after he allegedly subjected patients unnecessarily to pain.

Hospital officials suspended, later reinstated and again suspended Wahi's
privileges. Then in July 1999, CAMC trustees denied Wahi's request for
reappointment to the medical staff, at the recommendation of the hospital's
credentials committee.

The medical board routinely investigates physicians suspended by hospitals in
the state.

After the long legal process with the board has ended for **Wahi**, he said he still
has confidence in the American system. A graduate of Kanpur University's
medical school in India, he said he decided 30 years ago that America was the
best country.

"Despite the trials and tribulations I've gone through, I've not changed my mind,"
he said. "This decision finally confirms that fairness prevails."

On Friday, state medical board officials formally released the board's actions
from its Nov. 10 regular meeting, including Wahi's order.

During his eight-year ordeal, **Wahi** sued CAMC for allegedly leaking a
derogatory internal, peer-review report to the Charleston Gazette. He also sued

the newspaper for libel.

EXHIBIT ___A___
Page __2__ of
___2__Pages

In Grant County, where **Wahi** in 2001 was practicing medicine, a circuit court judge dismissed the lawsuits.

In October of last year, the state Supreme Court dismissed the medical board's case against **Wahi** after the board's prosecutor declined to pursue charges filed against the surgeon.

While **Wahi** said he feels vindicated, CAMC officials are confident in their decision not to reinstate him.

"We stand by our decision not to renew his privileges," said Dr. Glenn Crotty, chief operating officer at CAMC. "We followed our obligation under the law and reported him to the National Practitioner Data Bank."

Writer Therese Smith can be reached at 348-4874 or by e-mail at therese@dailymail.com.

Search for: Rakesh Wahi                         (Search Help)
Publication Charleston Daily Mail
Article Dated Within 6 months

Copyright©2000 Charleston Newspapers Interactive